UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 5: 18-075-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| ANDRE STACKHOUSE, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

On June 5, 2024, Defendant Andre Stackhouse filed a motion for an appointment of counsel to assist with a request for compassionate release or a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  [Record No. 64] The undersigned denied the request for an appointment of counsel but directed the United States to explain its position regarding Stackhouse's underlying request for a sentence reduction.  [Record No. 65] After the United States filed its opposition to Stackhouse's motion, the Court provided Stackhouse with an extended period to file a Reply.  The Court received Stackhouse's Reply on July 23, 2024. [Record No. 71]  After a thorough review of the relevant documentation, Stackhouse's motion will be denied for the reasons that follow.

## I. Background

This is Stackhouse's third motion for compassionate release since April 2020, and the second one to be decided on the merits.[1]  [*See* Record Nos. 37, 64.]   Stackhouse was

---

[1]    However, this is Stackhouse's fourth motion seeking compassionate release or requesting the appointment of counsel to pursue compassionate release.  [*See* Record Nos. 33, 37, 62, 64.]

incarcerated at FCI Ashland when he filed his first and second motions in 2020.  [Record Nos. 33, 37]   In both instances, he expressed concern for his health, citing diabetes, poor cardiovascular function, obesity, and immunocompromise.  At that time, Stackhouse argued that these underlying conditions made him more vulnerable to the severe effects of COVID-19.

## A.  Prior Denials and Appeal

Stackhouse's first motion for compassionate release was denied for failing to exhaust administrative remedies, preventing the Court from reaching the merits of his petition.  [Record No. 34]  Stackhouse's second motion for compassionate release was prepared by counsel and adjudicated on the merits.  [Record No. 37]  In denying Stackhouse's second motion, the Court acknowledged the seriousness of his underlying medical conditions but concluded that the record failed to support his claims of inadequate treatment.  [Record No. 46, p. 3]  Because Stackhouse's motion failed to demonstrate an extraordinary and compelling justification for granting his requested relief, the Court was justified in denying the motion on that basis alone.  However, the Court proceeded to assess Stackhouse's eligibility with respect to the § 3553(a) factors.  In doing so, the undersigned concluded that those factors weighed against a reduction, thus providing an additional independent basis for denying Stackhouse's motion.  [*Id.* at 4]

This Court's denial of Stackhouse's compassionate release motion was upheld on appeal on June 17, 2021.  [Record No. 58]  In the opinion affirming this Court's denial, the United States Court of Appeals for the Sixth Circuit found no abuse of discretion in concluding that Stackhouse's health conditions "did not constitute an extraordinary and compelling reason for a sentence reduction."  [*Id.* at 3]  The Sixth Circuit's opinion also noted that "[i]n a compassionate-release proceeding, as at sentencing, the district court 'is best situated to

balance the § 3553(a) factors,' and Stackhouse has not shown that the district court abused its discretion in balancing those factors here."  [*Id.* at 4] (citation omitted)

## B. The Instant Motion

Stackhouse's pending motion for compassionate release largely mirrors the motions that were previously denied.  It differs from his prior motions in two key respects: the instant motion was filed after transferring to FCI Butner and addresses the care he is receiving there, and it is also the first of his motions to be reviewed under the 2023 *Guidelines Manual*.  [*See* Record No. 64]  In the instant motion, Stackhouse contends that he has "many serious health conditions" that are not being treated, that his health makes daily functioning very difficult and causes him to rely on other inmates for help with basic care, and that he fears his immunocompromised status leaves him particularly susceptible to illness.[2,3]  [*Id.*]

## II.  Legal Standard

A district court reviewing a prisoner's motion to reduce his sentence under § 3582(c)(1)(A) conducts a "three-step inquiry."  *United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020).  First, prisoners must show that extraordinary and compelling reasons warrant their requested reduction.  *United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022).  Second, courts must confirm that any sentence reduction "is consistent with applicable policy

[2]     Stackhouse filed the instant motion for compassionate release while once again requesting the Court appoint counsel.  [Record No. 64]  The undersigned denied the request for counsel, but maintained the request for compassionate release and directed a full briefing by the parties. [Record No. 65]

[3]     Stackhouse's BOP medical records indicate current diagnoses for Type 2 diabetes, obesity, high cholesterol, high blood pressure, mild hypokalemia, coronary artery disease, chronic periodontitis, and osteoarthritis.  [Record No. 69-2, pp. 66–70]

- 3 -

statements issued by the Sentencing Commission." *Id.* Lastly, defendants must persuade the court to grant the motion after the court considers the § 3553(a) factors. *Id.* Courts "must deny a defendant's motion if he fails to show either that extraordinary and compelling reasons warrant a sentence reduction or that the § 3553(a) factors support a reduction." *United States v. McKinnie*, 24 F.4th 583, 586 (6th Cir. 2022).

The Sixth Circuit "has predominantly defined what can constitute 'extraordinary and compelling' reasons for release by defining what circumstances cannot be 'extraordinary and compelling.'" *United States v. West*, 70 F.4th 341, 346 (6th Cir. 2023). While that precedent remains controlling in many instances, the Sentencing Commission's updated policy statement, as articulated in the expanded text of § 1B1.13(b), serves as a primary guidepost articulating the bounds of what it means to be "extraordinary and compelling."

## III. Discussion

Stackhouse cites the same medical conditions previously asserted and notes that FCI Butner cannot adequately address his complex medical needs—a claim he attempts to support with an NPR article discussing a disproportionate number of BOP in-custody deaths that have occurred at the Butner Federal Correctional Complex. [*See* Record No. 64-4.] But the article Stackhouse provides makes clear that Federal Medical Center Butner is the BOP's largest cancer treatment facility and that more people in BOP custody died of cancer over the last decade than any other cause. [*Id.*] Even if the Court finds the provided article independently compelling, it does not support Stackhouse's requested relief. It is not enough to merely assert, as Stackhouse does, "My serious health conditions are not being treated." [Record No. 64, p. 5]

- 4 -

## A. Extraordinary and Compelling Justification

Stackhouse's motion relies on his underlying medical conditions to demonstrate the extraordinary and compelling justification for granting a sentence reduction.[4]  Warden David Rich denied Stackhouse's BOP request for Compassionate Release/Reduction noting, "[y]ou do not have a debilitated medical condition and you are independent in your activities of daily living and your current medical conditions remain under control. . . .  You are receiving appropriate medical care and treatment by Health Services staff.  We are committed to providing you with the necessary and appropriate care for your medical needs."  [Record No. 64-3]  Warden Rich's assertions coincide with the Sentencing Guidelines' Policy Statement regarding extraordinary and compelling grounds for compassionate release based upon the medical circumstances of the defendant.  *See* USSG §1B1.13(b)(1)(A)–(C), p.s.  Stackhouse's unsupported claims to the contrary do not provide this Court with a sufficient basis in fact to find the existence of an "extraordinary and compelling" justification for his requested relief.

### 1. Terminal Illness

The Court may find an extraordinary and compelling reason for granting relief when a defendant is suffering from a "terminal illness."  USSG §1B1.13(b)(1)(A).  The relevant policy statement describes terminal illness as "a serious and advanced illness with an end-of-life trajectory."  *Id.*  It goes on to note that "[e]xamples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia."  *Id.*

---

[4]    While Stackhouse also briefly notes that he does not believe he would receive as punitive a sentence if he were sentenced today (citing §1B1.13(b)(6)), he fails to explain how he reaches the conclusion that his sentence was unusually long.  [Record No. 64]  As such, the Court will not explore that issue.

Stackhouse states in his reply that "there is no question that he suffers from a terminal illness involving 'end-stage organ disease.'"  [Record No. 71]  Despite the claim that such a conclusion is "just simple logic," his assertion is entirely unsupported.  [*Id.*]  Nowhere in Stackhouse's medical file is there any indication that he suffers from end-stage organ disease, nor does he explain how he reached such a conclusion.  Without this Court having to venture into the unfamiliar territory of medicine, a layperson's reading of Stackhouse's medical records contradicts his claim.  For example, in a medical note dated May 15, 2024, it is stated that Stackhouse should be scheduled for an ophthalmology "[f]ollow-up in 4–6 months." [Record No. 69-2, p. 1] Another note from the same week reports that Stackhouse "denies pain and ambulates without assistance."  [*Id.* at 2] A month earlier, an administrative note commented that Stackhouse's blood pressure was "not at goal but better than it has been in the past."  [*Id.* at 12] None of the clinical notes authored by the BOP or outside medical professionals paint a picture of someone facing terminal illness and an end-of-life trajectory.

The Bureau of Prisons uses a Medical Classification system that assigns a "care level" (Care Level 1 through Care Level 4) to each institution and inmate.  *See* BOP Policy Statement No. 6031.05, Patient Care (May 14, 2024) (updating and rescinding BOP Policy Statement No. 6031.04, Patient Care (June 3, 2014)).  The aim of this system is to ensure each inmate's healthcare needs can be matched to an institution capable of providing the requisite level of care.  *See* BOP, Clinical Guidance Document, *Care Level Classification for Medical and Mental Health Conditions or Disabilities* (May 2019).  "Inmate Care Levels are determined by their medical and/or mental health needs and are based primarily on the chronicity, complexity, intensity, and frequency of interventions and services that are required, as well as an inmate's functional capability."  *Id.* at 1.  Care Level 1 is for inmates who are "generally

healthy" and "have limited medical needs that can be easily managed by clinician evaluations every 6–12 months."[5]  *Id.* at 2.  Care Level 4 is for inmates requiring "services available only at a BOP Medical Referral Center (MRC), which provides significantly enhanced medical services and limited inpatient care."  *Id.* at 3.  These inmates' ability to function "may be so severely impaired as to require 24-hour skilled nursing care or nursing assistance."[6]  *Id.*

A comment within Stackhouse's medical file indicates that as recently as May 3, 2024, Stackhouse was classified as "Care level 2."  [Record No. 69-2, p. 75]  Per BOP guidance, inmates classified as Care Level 2 "are stable outpatients who require clinician evaluations monthly to every 6 months."  BOP, Clinical Guidance Document at 2.  This classification also recognizes that "[e]nhanced medical resources, such as consultation or evaluation by medical specialists, may be required from time to time."[7]  *Id.*  Were it to be suggested that the Court simply misunderstands the technical medical diagnostics contained within Stackhouse's file, the BOP's easy-to-understand classification system demonstrates that Stackhouse's condition is plainly not as he suggests.  Stackhouse has failed to demonstrate that his medical conditions rise to the level of terminal illness for which compassionate release may be authorized.

---

[5]     Examples of Care Level 1 conditions include: "Mild asthma, diet-controlled diabetes, stable HIV patients not requiring medications, well-controlled hyperlipidemia or hypertension, etc."  *Id.* at 2.

[6]     Examples of Care Level 4 conditions include: "Cancer on active treatment, dialysis, quadriplegia, stroke or head injury patients, major surgical treatment, and high-risk pregnancy."  *Id.* at 3.

[7]     Examples of Care Level 2 conditions include: "Medication-controlled diabetes, epilepsy, or emphysema."  *Id.* at 2.

## 2.  Inability to Provide Self-Care

Stackhouse also makes the claim that his many health conditions make completing activities of daily living ("ADLs") very difficult, noting that he often relies on others for help with basic care.[8]  [Record No. 64, p. 5]  But this claim is seemingly contradicted within the Proposed Release Plan he provided the Court.  [*See* Record No. 64-1.]  Stackhouse responded "No" to a question asking, "Do you require assistance with self-care such as bathing, walking, toileting?"  [*Id.* at 4]  He also responded "No" when asked, "Do you require assisted living?" [*Id.*]  Stackhouse's medical records also note that he ambulates unassisted, [Record No. 69-2, p. 1], and "can perform all his ADLs," [Record No. 69-3, p. 2].  At no point does Stackhouse explain to the Court what specifically his alleged limitations are, nor does he provide any support for such a claim.  He has not demonstrated that he is suffering from a medical condition "that substantially diminishes [his] ability . . . to provide self-care" while incarcerated.  *See* USSG §1B1.13(b)(1)(B), p.s.

## 3.  Inadequate Long-Term or Specialty Care

Stackhouse argues in his reply that he is eligible for compassionate release because he is suffering from medical conditions for which the requisite long-term or specialty care is not being provided.  [Record No. 71] This argument can be quickly disposed of.  In the same Reply, Stackhouse accuses the United States of contradicting the treatment of medical

---

[8]     ADLs are "actions that involve the management of basic bodily functions."  BOP Policy Statement No. 5200.05, Management of Inmates with Disabilities (Oct. 27, 2017).  ADLs can be divided into Basic ADLs (BADLs) and Instrumental ADLs (IADLs).  *Id.*  BADLs are "[a]ctivities involving functional mobility and personal care," and may include activities such as ambulation, feeding, hygiene, toileting, bathing, and dressing.  *Id.*  IADLs are "[f]unctions concerned with a person's ability to cope with her/his environment," and may include activities such as shopping, meal preparation, laundry, and use of the telephone.  *Id.*

specialists "at the BOP and Duke Hospital and an outside eye clinic." [*Id.*] He goes on to note that he has been seeing Duke Hospital and BOP specialists "over a period of years." [*Id.*] Stackhouse has failed to demonstrate how he is being deprived of specialty care, while simultaneously accusing the government of contradicting the expertise of the medical specialists that he has been in the care of for years. His BOP medical file documents numerous recent clinical encounters with specialists from the BOP and outside medical groups addressing his ophthalmologic, orthopedic, diabetic, and cardiac health. [*See* Record No. 69-2.] His claim that his "serious health conditions are not being treated," is entirely undermined by his extensive medical record and his own admissions.

### 4. Vulnerability to Disease Outbreak

Finally, the Court will respond to Stackhouse's claim that he is eligible for compassionate release because he is immunocompromised and vulnerable to COVID-19 and MRSA infections, which he claims are "sweeping through the camp." [Record No. 64] To rise to the level of an extraordinary and compelling circumstance, Stackhouse must show: (1) that he is "housed at a correctional facility affected or at imminent risk of being affected by . . . an ongoing outbreak of infectious disease;" (2) that he is "at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease;" and (3) that "such risk cannot be adequately mitigated in a timely manner." *See* USSG §1B1.13(b)(1)(D), p.s. Stackhouse has not sufficiently met any of these requirements.

First, Stackhouse has provided no evidence of an impending or ongoing outbreak of disease at FCI Butner—his mere assertions are not sufficient. Moreover, the government completely refutes his claim and provides evidence. [*See* Record No. 66, p. 9.] Second, even

if an outbreak were underway, Stackhouse has not demonstrated that he is at increased risk of severe medical complication or death.  He attempts to support his claim by noting that "[a] simple GOOGLE SEARCH will reveal that being immunocompromised is a common part of the medical conditions" he suffers from.  [Record No. 71]  Whether something is "common" and whether it applies to Stackhouse are two different things—he must demonstrate that *he* is immunocompromised.  Assuming he could do that, he would then have to demonstrate that being immunocompromised increases his risk, not just of illness, but of *severe* medical complication or *death*.  And last, even if he had adequately demonstrated any of these things, he would still have to show that his increased risk cannot be mitigated in a timely manner. Stackhouse has failed to support any of his claims.

## B.  Section 3553(a) Factors

Since Stackhouse has not demonstrated an extraordinary and compelling justification for granting compassionate release, the Court need not proceed with its analysis of the sentencing factors under 18 U.S.C. § 3553(a).  *McKinnie*, 24 F.4th at 586.  Nevertheless, the Court will briefly explain why consideration of the § 3553(a) factors provides an alternative basis on which Stackhouse's motion will be denied.

When this Court denied Stackhouse's prior motion for compassionate release, the undersigned explained that the § 3553(a) factors weighed against a sentence reduction. [Record No. 46, p. 5]  Since that time, nothing has changed to alter the Court's analysis with respect to these factors.  Stackhouse committed a very serious offense—a lesser sentence would unduly diminish its seriousness. *See* 18 U.S.C. § 3553(a)(1).  He was arrested with a very large quantity of deadly narcotics that he admitted to distributing while in possession of a firearm—conduct demonstrating a profound disrespect for the law and for the public more

broadly. *See* 18 U.S.C. § 3553(a)(2)(A).  Moreover, Stackhouse's voluminous criminal history demonstrates a recidivist character requiring a sentence capable of delivering necessary deterrence and keeping the public safe from his future criminal misconduct.  *See* 18 U.S.C. § 3553(a)(2)(B)–(C).  Stackhouse's assurance that he has had "NO serious Disciplinary Issues while being incarcerated," is of little comfort given his history.  [*See* Record No. 71.]

The last time Stackhouse sought compassionate release and remarked about his rehabilitative efforts, the Court noted that "Stackhouse has not provided evidence of any the courses he allegedly completed."  [Record No. 46] Despite that prior warning, Stackhouse again asks the Court to consider his rehabilitative efforts without providing any evidence of the courses he claims to have taken—instead, he notes that his claims "can easily be confirmed by requesting a copy of his PROGRAMMING STATEMENT."  [Record No. 71] While evidence of completed coursework would not alter the outcome of the Court's analysis, it remains Stackhouse's obligation to prepare and present evidence he wishes the Court to consider.  All things considered, it remains the Court's opinion that Stackhouse's sentence already reflects the shortest period of incarceration that would be sufficient to satisfy the purposes set forth in 18 U.S.C. § 3553(a), while being no longer than necessary to achieve those purposes.

### IV.  Conclusion

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.      Defendant Stackhouse's Motion for a Sentence Reduction [Record No. 64] is **DENIED**.

- 11 -

2.      The Clerk of the Court is **DIRECTED** to forward a copy of this Memorandum

Opinion and Order to the defendant at his current place of incarceration and to the United

States Probation Office in Lexington, Kentucky.

Dated: August 20, 2024.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky